UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANE DOE** | **CIVIL ACTION NO: 23-CV-2** |
| **VERSUS** | **JUDGE DARREL JAMES PAPILLION** |
| **DEPARTMENT OF HOMELAND SECURITY, ET AL.** | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Defendant United States Citizenship and Immigration Services ("USCIS"). R. Doc. 15. Plaintiff Jane Doe ("Doe") did not file an opposition brief to USCIS's motion. For the reasons assigned below, it is ordered that USCIS's motion is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

Doe is a Chinese citizen who, citing fear of persecution if she returns to her home country, filed an Application for Asylum and Withholding of Removal on March 16, 2020. R. Doc. 1 at ¶ 17. On January 3, 2023, Doe filed suit against USCIS, the agency charged with adjudicating asylum applications, claiming that it is unlawfully delaying the adjudication of her asylum application. *Id.* at ¶ 25. On March 22, 2023, USCIS filed the instant motion to dismiss for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim.

## LEGAL STANDARDS

I. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction" and "may not exercise jurisdiction absent a statutory basis." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611 (2005). For this reason, a court must ensure it has subject matter jurisdiction over a matter before proceeding to the merits.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject matter jurisdiction may be determined from (1) the complaint; (2) the complaint and undisputed facts found in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The law "presumes that a cause lies outside [the court's] limited jurisdiction" until the party asserting federal jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

II.     *Motion for Summary Judgment*[1]

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

---

[1] Although USCIS seeks dismissal on the merits through a motion to dismiss rather than a motion for summary judgment, USCIS attaches to its motion two exhibits which are neither attached to Doe's Complaint nor referenced in her Complaint and central to her claims. Rather than exclude these exhibits, the Court converts USCIS's motion to dismiss into a motion for summary judgment. *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659 (5th Cir. 1979). Moreover, because USCIS's motion was filed on March 22, 2023, and set for submission date on April 10, 2023, the notice and reasonable time to respond requirement under Rule 56 is satisfied. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195-96 (5th Cir. 1988) (quoting *Kibort v. Hampton*, 538 F.2d 90, 91 (5th Cir. 1976)); *Hodge v. Engleman*, 90 F.4th 840, 845 (5th Cir. Jan. 16, 2024); *McDonald v. Kan. City S. Ry. Co.*, No. 16-CV-15975, 2017 WL 1709353, at *2 (E.D. La. May 3, 2017).

The party seeking summary judgment has the initial burden of showing the absence of a genuine issue of material fact by pointing out the record contains no support for the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (quoting FED. R. CIV. P. 56(c)). Thereafter, if the nonmovant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). District courts may not grant an unopposed motion for summary judgment simply because it is unopposed, but may do so "if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014) (per curium).

## ANALYSIS

USCIS attacks Doe's motion on two bases: first, that this Court lacks subject matter jurisdiction to hear Doe's claims, and second, that USCIS has not unreasonably delayed adjudicating Doe's asylum application. The Court will, as it is obligated to do, consider USCIS's jurisdictional attacks first.

I.   *Whether the Court Has Subject Matter Jurisdiction Over Doe's Claims*

Doe cites three bases for subject matter jurisdiction: the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; and the All Writs Act, 28 U.S.C. § 1651. USCIS insists none of these statutes confer subject matter jurisdiction onto the Court, and argues that, for this reason, Doe's Complaint must be dismissed. The Court begins with the APA.

The APA provides for judicial review of an agency action that causes a person to suffer a legal harm. 5 U.S.C. § 702. An "agency action" in the context of the APA includes an agency's failure to act. 5 U.S.C. § 551(13). Relevant to the instant motion, the APA requires courts to

3

"compel agency action . . . unreasonably delayed." 5 U.S.C. § 706(1). This authority does not extend, however, to an agency action which is statutorily precluded from judicial review or an agency action that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2).

Doe alleges USCIS's failure to adjudicate her application violates 8 U.S.C. § 1158(d) of the Immigration and Nationality Act ("INA"). To be sure, Section 1158(d) provides that "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed," and that the "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. 1158(d)(5)(A)(ii)-(iii). Section 1158(d) goes on to instruct, however, that "nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). Consequently, Doe may not seek relief under the APA by means of Section 1158(d), and likewise cannot invoke federal jurisdiction under this provision. *See Stockman v. Fed. Election Com'n*, 138 F.3d 144, 152 (5th Cir. 1998) (quoting 5 U.S.C. § 701(a)) (cleaned up) ("Section 701 withdraws the cause of action if the relevant statute 'precludes judicial review or agency action is committed to agency discretion by law.'").

Importantly, however, Doe's claim is not limited to USCIS's failure to adjudicate her application under Section 1158(d). Doe also alleges USCIS has failed to comply with the APA's general requirement that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). This provision imposes a non-discretionary duty on USCIS to adjudicate asylum applications within a reasonable time. *Ahmed v. Bitter*, No. 22-CV-2474, 2024 WL 1340255, at *2 (S.D. Tex. Mar. 28, 2024). "This means in turn that jurisdiction exists as a federal question under § 706(1) of the APA as to action seeking to compel [USCIS] to observe

4

the reasonable-time mandate with respect to adjudication of [Doe's asylum application]." *Id.*; *Fangfang Xu v. Cissna*, 434 F.Supp.3d 43, 52 (S.D. N.Y. 2020) ("Plaintiff's right to adjudication within a reasonable time exists independently of § 1158(d), and the Court concludes that § 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious."); *Zheng v. Mayorkas*, No. 22-CV-95, 2023 WL 4112938, at *4 (N.D. Miss. June 21, 2023) ("[T]he fact that Section 1158(d)(7) preclude[s] the stand-alone INA claim [does] not mean that it preclude[s] *all* claims," including a claim under the APA). Accordingly, this Court may exercise subject matter jurisdiction over Doe's claims pursuant to the APA.[2]

II.   Whether the Delay In Adjudicating Doe's Application Is Unreasonable

Having found federal jurisdiction exists over Doe's claim, the Court turns to the question of whether the adjudication of Doe's application was unreasonable under the APA. To help determine whether a plaintiff has successfully shown that an agency's delay is unreasonable, courts routinely employ the so-called *TRAC* factors outlined by the United States Court of Appeals for the D.C. Circuit in *Telecommunications Research and Action Center v. FCC* ("*TRAC*").[3] 750 F.2d 70, 80 (D.C. Cir. 1984). The *TRAC* factors are:

> (1) The time agencies take to make decisions must be governed by a "rule of reason,"
> (2) where Congress has provided a timetable or other indication of the speed at which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are

---

[2] For the sake of brevity, and because the Court is satisfied it has subject matter jurisdiction in this instance, the Court declines to consider whether the Mandamus Act or the All Writs Act also confer subject matter jurisdiction on the Court.

[3] The Fifth Circuit "has never adopted th[is] multi-factor test." *Li v. Jaddou*, No. 22-CV-50756, 2023 WL 3431237, at *1 n.2 (5th Cir. May 12, 2023). However, in the absence of clear instruction from the Fifth Circuit on a more appropriate analysis under which to consider unreasonable delay claims, and in an effort to avoid inconsistent legal frameworks, the Court employs the *TRAC* factors, albeit with flexibility. *See TRAC*, 750 F.2d at 80 ("Although the standard is hardly ironclad, and sometimes suffers from vagueness, it nevertheless provides useful guidance on assessing claims of agency delay.").

5

at stake, (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by delay, and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Ensco Offshore Co. v. Salazar*, 781 F.Supp.2d 332, 337 (E.D. La. Feb. 17, 2011) (quoting *TRAC*, 750 F.2d at 80). After review of the *TRAC* factors, the Court, while sympathetic to Doe's position and understanding of her desire for prompt adjudication, finds the delay in processing her application is not unreasonable within the meaning of the APA.

A. The First and Second Factors

The first *TRAC* factor asks whether the time in which the agency processes applications is governed by a rule of reason. *TRAC*, 750 F.2d at 80. To answer this question, it is helpful to understand the structure and history of the asylum application process.

Asylum applicants seeking to work must secure an employment authorization document, and prior to 1955, regulations provided for the issuance of such documents to asylum seekers who filed "non-frivolous" asylum applications, as well as asylum seekers whose applications were pending for more than ninety days. R. Doc. 15-2 at ¶¶ 14, 15. In the early 1990s, nearly two-thirds of asylum applications were not decided within ninety days, and USCIS, assuming applications would take longer than ninety days to process, began mailing employment authorization documents to applicants upon receipt of their application. *Id.* at ¶ 15. This system led to an increase in fraudulent, non-meritorious, or frivolous claims filed for the purpose of securing employment authorization. *Id.* In an effort to curb this trend, the agency implemented the "Last-In-First-Out" program ("LIFO"), under which newer cases are scheduled for interviews ahead of older cases. The thought behind LIFO is that "[b]y giving priority to the newest cases, applicants were on notice that filing asylum applications solely to obtain work authorization

6

carried a risk that their cases would be heard quickly and that their efforts to solely obtain work authorization would be fruitless." *Id.* at ¶ 17. Notably, the reforms to the asylum adjudication process, including LIFO, have been cited as a success: the backlog of asylum applications pending for more than six months decreased from 464,100 cases in 1995 to just over 4,200 in 2013. *Id.* at ¶ 18.

Based on the foregoing, there can be little doubt that LIFO is a rule of reason. The history of the asylum application process shows that the purpose, and indeed the effect, of LIFO is to solve the issue of USCIS's backlog of asylum applications. Indeed, the structure of LIFO delays applications of earlier filing asylum seekers, but "this is a byproduct of a reasoned attempted to address mounting issues with the asylum application process." *Xu*, 434 F.Supp.3d at 53. Consequently, this Court, like many others, finds LIFO is a rule of reason. *Id.* ("[T]he LIFO rule constitutes a rule of reason that satisfies the first TRAC factor."); *Zheng*, 2023 WL 4112938, at *6 ("LIFO constitutes a 'rule of reason.'"); *Lajin v. Radel*, No. 19-CV-52, 2019 WL 3388363, at *3 (S.D. Cal. July 26, 2019) ("[T]he last in, first out policy sets forth a 'rule of reason' for the adjudication of asylum applications."); *Liuqing Zhu v. Cissna*, No. 18-CV-9698, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (finding same).

The second factor, which informs the first, asks whether Congress has provided an indication of how long an application process should take. *TRAC*, 750 F.2d at 80; *Zhang*, 2020 WL 5878255, at *5. Congress has explicitly done so here. As discussed above, Section § 1158(d) provides the following relating to the adjudication of asylum applications:

> In the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed . . . [and] in the absence of exception circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed[.]

7

8 U.S.C. § 1158(d). Congress's timetable on the adjudication of asylum applications does not change the Court's opinion that LIFO is a rule of reason, however. Importantly, the timetables contemplated in Section 1158(d) are not mandatory. The plain wording of the provision includes a clear qualification of the timetables—"the absence of exceptional circumstances," and vests USCIS with the discretion to determine whether exceptional circumstances exist. Indeed, the Court supposes that a dramatic increase in asylum applications and a resulting backlog could very well constitute the "exceptional circumstances" contemplated by Congress. *Zhang*, 2020 WL 5878255, at *5 ("[T]he qualifying phrase 'absent exceptional circumstances' in § 1158(d)(5)(iii) suggests that Congress intended that the timeline not apply while the USCIS is dealing with an exceptional level of asylum applicants."). Moreover, as discussed above, Congress did not make USCIS's failure to comply with these timetables actionable. Accordingly, while non-binding timetables exist, "the Court does not ascribe [them] much significance." *Xu*, 434 F.Supp.3d at 53. For these reasons, the *TRAC* factors support a finding that the adjudication of asylum applications pursuant to LIFO is a rule of reason.

    B.  *The Third and Fifth Factors*

The third and fifth factors instruct the Court to examine the nature and extent of the interests prejudiced by the delayed adjudication. In her Complaint, Doe argues she is prejudiced by adjudication of her asylum application. Notably, Doe does not argue that this delay has damaged her health or welfare, arguing instead that she is left "in perpetual fear that she will be forced to return to China." R. Doc. 1 at ¶ 20. But Doe's cited prejudice is inherent in the asylum application process. Under this system, "worthy applicants are not entitled to benefits," including peace of mind, "until their applications have been assessed and approved." *Xu*, 434 F.Supp.3d at 54 (citing *Zhu*, 2019 WL 3064458, at *4). The Court certainly does not intend to minimize the effect this

delay has had on Doe. But the reality is that every asylum applicant almost certainly has fears and concerns that are similar to, or possibly greater than, Doe's, and Doe has not offered the Court any reason why it should compel USCIS to immediately adjudicate her application, likely placing her ahead of other applicants who have been waiting as long or longer.

C. The Fourth Factor

Doe's failure to cite special circumstances likewise hurts her success on the fourth factor, which instructs courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. If the Court granted Doe's request, USCIS would be forced to move Doe's application to the front of the line. While this might be of great benefit to Doe, it could further delay the adjudication of applications ahead of Doe's. *Zhang*, 2020 WL 5878255, at *5; *Li v. Chertoff*, 2007 WL 4326784, at *6 (S.D. N.Y. Dec. 7, 2007) (internal quotations and citations omitted) ("In deciding whether to . . . compel an administrative agency to take action on a particular case, the Court must consider. . . whether compelling the agency to focus its attention on one case would force it to shift resources away from equally deserving applicants."); *Ahmed*, 2024 WL 1340255, at *5 ("[N]o showing is made of anything particular to [Plaintiffs'] situation, or that any hardships they face due to delay are different from those of similarly situated applicants."). Indeed, an order compelling USCIS to adjudicate Doe's application would frustrate the purpose of LIFO. Simply, "[t]he effect of leapfrogging [Doe's] application to the front of the line would do nothing to cure the deficiencies of the asylum process; it would only harm other applicants, who are equally deserving of prompt adjudication." *Xu*, 434 F.Supp.3d at 55.

D. The Sixth Factor

As to the final *TRAC* factor, Doe alleges no impropriety by USCIS in its failure to adjudicate her application, and none is apparent to the Court. On the contrary, everything the Court has considered leads it to conclude USCIS is actively and diligently working to process asylum applications and that this process has been hindered due to the sheer number of applications that are filed. This factor, as well as the other five *TRAC* factors, shows the delay in processing Doe's asylum application is not unreasonable under the APA. For this reason, USCIS is entitled to judgment as a matter of law.

### III. Leave to Amend

The Court's decision rests, in part, on Doe's failure to make a compelling showing that the prejudices she faces in waiting for her application to be adjudicated is greater than the prejudice other applicants likely face. To ensure Doe has the opportunity to plead her best case, and with Doe's status as a pro se plaintiff in mind, Doe is granted leave to file an amended complaint. Should Doe choose to file an amended complaint, she must do so on or before May 13, 2024.

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that USCIS's motion is **GRANTED IN PART** and **DENIED IN PART**. To the extent USCIS seeks dismissal of Doe's claims for lack of subject matter jurisdiction, USCIS's motion is **DENIED**.

To the extent USCIS seeks dismissal of Doe's claims on the merits, USCIS's motion is **GRANTED**, and Doe's claims are **DISMISSED WITHOUT PREJUDICE**. Doe may file an amended complaint on or before **May 13, 2024**, and the Clerk's Office is directed to leave this

matter open until then.  Should Doe decline to file an amended complaint by this date, the Clerk's Office is directed to administratively close this matter.[4]

The Clerk's Office is instructed to mail a copy of this Order and Reasons and the accompanying judgment to Jane Doe.

New Orleans, Louisiana, this 12th day of April 2024.

                                      **DARREL JAMES PAPILLION**
                                      **UNITED STATES DISTRICT JUDGE**

---

[4] In the event that Doe does not file an amended complaint, the Court will *not* convert this dismissal to a dismissal with prejudice to ensure that, should Doe's circumstances change such that the relief she seeks becomes appropriate, that avenue remains open to her.